**IN THE UNITED STATES BANKRUPTCY COURT FOR**

**THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | CASE NO. 20-04536 (EAG) |
| JJW Metal Corp., | Chapter 7 |
| DEBTOR. | |
| JJW Metal Corp., | Adversary No. 22-00030 |
| PLAINTIFF, | |
| v. | |
| Municipio Autonomo de Carolina, | |
| DEFENDANT. | |

**Opinion and Order**

JJW Metal Corp. operates a ferrous material collection and recycling center in the Municipality of Carolina. Carolina initiated an action in the Puerto Rico superior court to revoke JJW Metal's use permit. When JJW Metal filed for bankruptcy, the superior court determined it lacked jurisdiction to continue and stayed the action. Carolina appealed to the Puerto Rico court of appeals. The court of appeals reversed, finding the state court action excepted from the automatic stay and ordering its continuation.

JJW Metal filed the adversary complaint of caption alleging Carolina violated the automatic stay by continuing with the state court action. JJW Metal also asserts that all the state court's determinations on its use permit are void and invalid because the state courts lost jurisdiction once JJW Metal filed for bankruptcy. Carolina asserts it acted within its police and regulatory power, an exception to the automatic stay under section 362(b)(4), in continuing to prosecute the state court action. It argues the state courts had jurisdiction to make determinations on JJW Metal's operations and use permit and those decisions are valid and enforceable.

1

JJW Metal and Carolina filed motions for summary judgment in favor of their respective positions. Each party also opposed the other's motion for summary judgment. The threshold question here is the applicability of the section 362(b)(4) exception to the state court action on JJW Metal's use permit.

## I. Jurisdiction

This court has jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 1334 and 157(a), Local Civil Rule 83K(a), and the General Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico dated July 19, 1984 (Torruella, C.J.).[1]

## II. Uncontested Facts

The following facts are uncontested under Rule 56 and Local Civil Rule 56, made applicable to these proceedings by Bankruptcy Rule 7056 and Local Bankruptcy Rules 1001-1(b) and (d), as found in the record of this case and the statements of proposed uncontested facts filed by the parties:

1. On May 15, 2014, the Department of Urban Development of the Municipality of Carolina issued permit number 11-0585 U to authorize the operation of JJW Metal's ferrous material collection and recycling center.[2] (Exhibit C, p. 5, ¶ 5, Adv. Dkt. No. 100.)

2. On October 29, 2018, the Department of Environmental Affairs of the Municipality of Carolina issued a Notification and/or Notice of Breach to JJW Metal. The description of the violation included the expiration dates of various permits and licenses. (Exhibit A, Adv. Dkt. No. 100.)

---

[1] Unless otherwise indicated, all references to "Bankruptcy Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101-1532. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are to the Federal Rules of Civil Procedure. All references to "Local Bankruptcy Rule" are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Puerto Rico. And all references to "Local Civil Rule" are to the Local Rules of Civil Practice of the United States District Court for the District of Puerto Rico.
[2] The use permit number 11-0585 U is also referred to as 11-0585-UU-N01 and 11-585 U in different state court documents.

2

3. On November 28, 2018, a fire occurred on JJW Metal's premises. (Exhibit C, p. 6, ¶ 9, Adv. Dkt. No. 100. Exhibit B, Photos, Adv. Dkt. No. 100.)

4. On November 29, 2018, Carolina filed a complaint in the superior court under article 14.1 of the Law for the Reform of the Permit Process of Puerto Rico, Law number 161 of December 1, 2009, as amended. P.R. Laws Ann. tit. 23, § 9024. Carolina alleged that a report prepared after an inspection on October 29, 2018, showed that JJW Metal was not following environmental laws and regulations and that JJW Metal's actions impacted wetlands and sensitive areas, such as the Rio Grande de Loiza riverbed. As remedies, Carolina requested a permanent injunction ordering JJW Metal to cease operations and the revocation of permit number 11-585 U. (Exhibit C, Adv. Dkt. No. 100.)

5. On December 10, 2018, the parties submitted a joint motion in case number CA2018CV03362 which included the terms and conditions of a settlement agreement. (Exhibit D, Adv. Dkt. No. 100.)

6. In the joint motion, the parties listed the actions taken and orders entered by the superior court at a December 6, 2018, hearing. During that hearing, the superior court:

> a) Dismissed without prejudice the request to revoke Use Permit No. 11-0585-UU-N01, due to lack of jurisdiction.
>
> b) Ordered the immediate suspension of operations at the collection and recycling center operated by the defendant, for a period of SEVENTY-FIVE (75) DAYS, by virtue of the agreement reached by the parties to that effect.
>
> c) Ordered that the suspension of operations was limited to the RECEIPT of new material, not the REMOVAL of existing material, which would continue, always under the oversight of the Environmental Quality Board (EQB), the participation of the Municipality of Carolina and other concerned agencies.
>
> d) Granted until Monday, December 10, 2018, for the parties to submit to the court, through a joint motion, all of the terms and conditions that will constitute the Suspension Agreement.

(Exhibit D, pp. 5-6, ¶ 3, Adv. Dkt. No. 100.)

7. In compliance with the order of the superior court, the parties proposed the following in the joint motion:

3

II. TERMS AND CONDITIONS OF THE SETTLEMENT AGREEMENT

1) J.J.W. METAL CORP. shall suspend the operation of the collection and recycling center located on Rd. #3 KM 13.6 of the Canovanillas Ward, Carolina, for a period of SEVENTY-FIVE (75) DAYS, starting on Thursday, December 6, 2018.

2) The suspension of operations **includes**:

a) Any and all activities pertaining to the receipt and/or collection of any type of new material.

b) Activities pertaining to the loading and unloading of any type of new material whatsoever.

► *NEW MATERIAL refers to any type of material that, as of Thursday, December 6, 2018, is not already being stored at the facilities of J.J.W. METAL CORP.*

3) The suspension of operations does **NOT include**:

a) Administrative, office and supervisory work.

b) Work that involves cleaning, including the relocation and/or organization of material already stored at the facilities of J.J.W. METAL CORP., duly supervised by the Environmental Quality Board, the officers assigned by the Municipality of Carolina to that effect, and any other state or federal agency having jurisdiction.

c) Weighing, packing, preparing and loading material already stored at the facilities of J.J.W. METAL CORP., as part of the work performed to clean, relocate material and transfer material out of the facilities, duly supervised by the Environmental Quality Board, the officers assigned by the Municipality of Carolina to that effect, and any other state or federal agency having jurisdiction.

d) The transfer of material already stored at the facilities of J.J.W. METAL CORP. out of the facilities.

► *The transfer of material out of the facilities of J.J.W. METAL CORP. shall be performed under the supervision of the Environmental Quality Board, the officers assigned by the municipality of Carolina to that effect, and any other state or federal agency having jurisdiction.*

4

4) In the event that J.J.W. METAL CORP. requests permission to resume operations, the Municipality shall evaluate such request along with all state and federal agencies having jurisdiction over this operation.

(Exhibit D, pp. 6-7, ¶ 4, Adv. Dkt. No. 100.)

8.  The superior court entered a judgment on December 11, 2018, incorporating the agreements reached in the December 28, 2018, joint motion. (Exhibit E, pp. 9-10, Adv. Dkt. No. 100.)

9.  On June 3, 2019, Carolina filed an urgent motion for execution of judgment and requested an order suspending JJW Metal's operations. At a hearing held on July 18, 2019, the parties stipulated that JJW Metal had restarted operations on May 31, 2019, without requesting authorization from Carolina. The superior court analyzed the December 10, 2018, joint stipulation and found its terms clear and unambiguous. Clause 4 of the agreement required JJW Metal to request authorization from Carolina before resuming operations. Therefore, the superior court ordered JJW Metal to suspend its operations immediately and follow the procedures stipulated in the agreement.  (Exhibit F, pp. 11-14, Adv. Dkt. No. 100.)

10. On September 3, 2020, Carolina informed the superior court that it denied JJW Metal's request to resume its operations. The ruling issued by Carolina informed JJW Metal of the conditions to resume operations. (Exhibit VII, p. 4, Adv. Dkt. No. 111.)

11. JJW Metal filed on September 21, 2020, an administrative reconsideration of Carolina's Resolution. (Exhibit VII, p. 5, Adv. Dkt. No. 111.)

12. On November 23, 2020, JJW Metal filed a voluntary petition under chapter 11 of the Bankruptcy Code. (Bankr. Dkt. No. 1.)

13. On November 30, 2020, the superior court stayed the proceedings for execution of judgement because of the bankruptcy filing. (Exhibit I, Adv. Dkt. No.111. Exhibit VII, p. 5; Adv. Dkt. No. 111. Exhibit J, p. 77, Adv. Dkt. No. 100.)

14. On January 20, 2021, Carolina denied the administrative reconsideration of its ruling which conditioned JJW Metal's request for resuming operations. (Exhibit VII p. 5, Adv. Dkt. No. 111.)

15. On June 25, 2021, Carolina filed an urgent motion for contempt and requested an order suspending JJW Metal's operations. The urgent motion stated that JJW Metal resumed operations on February 21, 2021, without authorization. (Exhibit VII, p. 6, Adv. Dkt. No. 111.)

16. The superior court denied the urgent motion on July 20, 2021, ruling it had no jurisdiction because of the bankruptcy filing. (Exhibit II, Adv. Dkt. No. 111. Exhibit VII, p. 6, Adv. Dkt. No. 111.)

17. On July 20, 2021, Carolina filed in the bankruptcy court a request for a comfort order on the effect of the automatic stay on the state proceedings. Carolina alleged that JJW Metal told the superior court it lacked jurisdiction over Carolina's request to suspend JJW Metal's operations. Carolina requested an order from the bankruptcy court clarifying that, under section 363(b)(4), the automatic stay did not operate against an action to enforce Carolina's police and regulatory powers. (Bankr. Dkt. No. 155.)

18. On August 4, 2021, Carolina moved the superior court to reconsider its order of July 20, 2021, refusing to exercise jurisdiction. (Exhibit VII, p. 6, Adv. Dkt. No. 111.)

19. On August 20, 2021, the bankruptcy court issued the following order:

> The Autonomous Municipality of Carolina's "Motion for Comfort Order Regarding Automatic Stay" at docket number 155 is granted to the extent herein stated to make clear that the filing of a bankruptcy petition under section 301 of the Bankruptcy Code by J.J.W. Metal Corp. does not operate as a stay, under subparagraphs (1), (2), (3), or (6) of section 362(a) of the Bankruptcy Code, of the commencement or continuation of an action or proceeding by the Autonomous Municipality of Carolina to enforce its police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the Municipality to enforce its police or regulatory power, including its police or regulatory power to enforce its environmental and safety laws and regulations to protect the public.

(Bankr. Dkt. No. 199.)

20. On September 27, 2021, the superior court denied the motion for reconsideration filed on August 4, 2021, and concluded that Carolina had to request relief from the automatic stay to continue with its state court action. (Exhibit K, pp. 1-2, Adv. Dkt. No. 100.)

21. On October 27, 2021, Carolina filed a petition for certiorari to the Puerto Rico court of appeals. The petition requested review of the order of July 20, 2021, in which the superior court

6

denied Carolina's urgent motion and ruled it lacked jurisdiction because of the bankruptcy filing. Carolina argued its request for an order from the superior court to suspend JJW Metal's unauthorized operation was based on its police and regulatory powers and, thus, excepted from the automatic stay. (Exhibit VII, p. 6, Adv. Dkt. No. 111. Exhibit N, p. 37, Adv. Dkt. No.100.)

22. On December 10, 2021, the Puerto Rico court of appeals overruled the superior court's determination of July 20, 2021. The court of appeals found that Carolina's request to suspend JJW Metal's operations for failure to comply with its use permit was made pursuant to its police and regulatory powers by virtue of Article 14.1 of the Law for the Reform of the Permit Process of Puerto Rico, Law number 161 of December 1, 2009, as amended; and Article 13.013 of the Law of Autonomous Municipalities of Puerto Rico., Law number 81 of August 31, 1991, as amended. P.R. Laws Ann. tit. 23, § 9024 and P.R. Laws Ann. Tit. 21 § 4611. Therefore, the automatic stay did not operate to stay the state court proceedings. (Exhibit VII, p. 7, Adv. Dkt. No. 111.)

23. On March 8, 2022, after the judgment of the court of appeals became final, Carolina filed a second motion to hold JJW Metal in contempt and requested that the superior court order JJW Metal to suspend its operations.  (Exhibit VII, p. 7, Adv. Dkt. No. 111. Exhibit O, pp. 62-65, Adv. Dkt. No. 100.)

24. The superior court scheduled an evidentiary hearing for June 8, 2022, to determine if JJW Metal was operating its business. (Exhibit VII, p. 7, Adv. Dkt. No. 111.)

25. JJW Metal filed the adversary proceeding of caption on May 17, 2022. (Adv. Dkt. No. 1.)

26. The superior court held an evidentiary hearing on June 8, 2022. (Exhibit VII, p. 8, Adv. Dkt. No. 111.)

27. On June 10, 2022, the superior court entered a ruling concluding that JJW Metal had resumed operations without Carolina's authorization as agreed in the joint stipulation filed with the court on December 10, 2018. The superior court ordered JJW Metal to suspend its operations immediately until it obtained an endorsement from Carolina authorizing it to resume operations. (Exhibit VII, p. 8, Adv. Dkt. No. 111.)

28. JJW Metal filed an amended complaint in the adversary proceeding of caption on September 2, 2022. (Adv. Dkt. No. 59.)

7

### III. JJW Metal's position

JJW Metal alleges that all of Carolina's post-petition actions in the superior court litigation over JJW Metal's use permit are in violation of section 362(a). JJW Metal asserts Carolina used the comfort order of August 20, 2021, to misrepresent to Puerto Rico's superior court and court of appeals that the automatic stay was not applicable to case number CA2018CV03362. JJW Metal alleges that Carolina also used the comfort order as if it was an order from the bankruptcy court lifting the automatic stay. Carolina's actions caused the superior court to order JJW Metal on June 10, 2022, to suspend its operations.

JJW Metal argues that under the confirmed plan of reorganization the bankruptcy court, without overstepping or interfering with the state judicial process, can order Carolina to review JJW Metal's evidence of compliance with the joint motion filed by Carolina and JJW Metal on December 6, 2018, and incorporated in a judgment by the superior court on December 11, 2018.

JJW Metal argues that under section 1108 it was allowed to operate unless the bankruptcy court provided otherwise. And Carolina did not request the bankruptcy court to order JJW Metal to cease operation of its recycling business. JJW Metal also states that the recycling business was property of the estate under section 541. Under 28 U.S.C. §1334(a) the court has exclusive jurisdiction over property of the estate and, therefore, over JJW Metal's premises and operations. Thus, the state courts were precluded from interfering with the operation of JJW Metal's recycling business. And the automatic stay triggered by the filing of the bankruptcy petition precluded Carolina from continuing with the state court action.

According to JJW Metal, the superior court action, which culminated with a settlement agreement on December 6, 2018, was not excepted from the automatic stay by section 362(b)(4) because there was no environmental issue under the consideration of the state court. The superior court could only enforce the agreement filed by the parties. The judgment was not about the exercise of Carolina's police and regulatory powers or matters that may affect the health and wellbeing or the environment of the citizens of Carolina. Police and regulatory power cannot interfere with the control of the res or property of the estate. Actions in violation of the automatic stay are void and without effect.

JJW Metal also asserts that the bankruptcy case has not been closed or dismissed. Therefore, the automatic stay is still in effect pursuant to sections 362(c)(2)(A) and (B). And the automatic stay pursuant to sections 362(a)(1) and (2) is still in effect. But, according to JJW Metal, even if the stay had terminated, the court could enter injunctive relief against Carolina pursuant to Article IX, Section 9.2 of the confirmed plan, which states:

> **9.2 Injunction Relating to the Plan.** As of the Effective Date, all Persons will be permanently enjoined from commencing or continuing, in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against Debtor, on account of, or respecting any Claims, debts, rights, **Causes of Action** or liabilities released pursuant to the Plan, except to the extent expressly permitted under the Plan.

JJW Metal argues that, pursuant to that provision, the court can determine that the state court case remains stayed because it affects the consummation of the plan. JJW Metal also asserts the plan has res judicata effect and that Carolina failed to move the bankruptcy court to lift the automatic stay and, therefore, could not continue with the state court action after confirmation.

## IV. Carolina's Position

First, Carolina argues that the amended complaint filed by JJW Metal requests remedies against the state court but fails to join state court officials as indispensable parties in the adversary proceeding of caption.

As to the substance of the amended complaint, Carolina alleges that the complaint filed in the superior court on November 29, 2018, against JJW Metal was related to its disorderly operation, citizens' complaints, and a fire that occurred in its premises. The superior court complaint was filed to protect the public health and safety of the citizens and natural resources of Carolina: not to collect a money judgment or seek a pecuniary interest. Through the December 10, 2018, joint motion filed in the superior court, Carolina achieved the immediate cessation of JJW Metal's dangerous operations. Carolina acted under its police and regulatory powers to safeguard the public health, safety, and welfare of its constituents and the integrity of its natural resources. The fact that judgment was achieved through a settlement agreement does not alter the nature of the regulatory action and does not deprive Carolina of the power to seek the enforcement of its police and regulatory powers through state court action.

Carolina argues that the state court actions were excepted from the automatic stay under section 362(b)(4). Section 362(b)(4) excepts from the automatic stay the commencement or continuation of any action or proceeding by a governmental unit, "to enforce such governmental unit's or organization's police or regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power." 11 U.S.C. § 362(b)(4).

Carolina filed the comfort order issued by the bankruptcy court in the superior court to clarify that JJW Metal's bankruptcy petition did not operate as an automatic stay when Carolina was enforcing its police and regulatory powers. After the ruling by the court of appeals, the superior court resumed the proceedings. The court of appeals ruling on jurisdiction is the law of the case and precludes the re-litigation of the legal issues decided therein.

Carolina further asserts that the automatic stay terminated either on January 31, 2022, when the court confirmed JJW Metal's plan of reorganization, or on April 1, 2022, the effective date of the plan. Therefore, there was no violation of the automatic stay when Carolina continued to prosecute the state court action and participated in the June 8, 2022, hearing. Carolina is not responsible for the state court decisions to assume jurisdiction over the controversy.

Also, Carolina states that JJW Metal's plan contemplated the scenario of a state court order forcing it to cease operations in Carolina. The plan provides that:

> During the course of Debtor's Chapter 11 proceedings its principal controversies have been with the Municipality of Carolina. As will be evidenced during the confirmation hearing, Debtor is able to continue its operations at its Carolina premises where it is currently operating.

> In the event that Debtor is forced to discontinue its operations thereat, Debtor will move the same to another location at Trujillo Alto, San Juan, or Rio Grande, Puerto Rico. Debtor's management has commenced the process of identifying locations where Debtor can conduct its operations. Even if this alternative would have to be implemented, all payments to professionals, priority tax claimants and general unsecured creditors under $20,000 will be made on the Effective Date, thus not affecting their treatment under the Plan.

> . . .

> Debtor believes the move and permit process for a new location can be achieved in a period from six (6) to nine (9) months. However, been [sic] conservative, a year has been considered.

10

Exhibit III to the Feasibility Report shows Debtor's Projections under this alternate scenario. It must be underscored that Debtor's president has committed to lend or contribute any necessary funds to cover the moving and related expenses and to maintain Debtor's going concern during the transition period.

(Bankr. Dkt. No. 259, pp. 13-14.)

According to Carolina, JJW Metal in effect did not dispute the jurisdiction of the state courts when it offered this alternate scenario in its plan of reorganization. Also, JJW Metal is obligated to comply with the terms of its own plan.

## V. Applicable Law and Analysis

### a. Summary Judgment Standard

The standard for summary judgment is well-known. Under Rule 56, made applicable to these proceedings by Bankruptcy Rules 7056 and 9014(c), summary judgment is available "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010). The moving party bears the burden of showing that "no genuine issue exists as to any material fact" and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v. P.R. Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

Once a properly supported motion is filed with the court, the opposing party "can shut down the machinery only by showing that a trial-worthy issue exists" that would warrant the court's denial of the motion for summary judgment. McCarthy v. Northwest Airlines, 56 F.3d 313, 315 (1st Cir. 1995). For issues where the opposing party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." Id. However, not every factual dispute is sufficient to frustrate summary judgment; the contested fact must be material and the dispute over it must be genuine. Id. An issue is "genuine" if it could be resolved in favor of either party. A fact is "material" if it is potentially outcome-determinative. See Calero-Cerezo v. United States DOJ, 355 F.3d 6, 19 (1st Cir. 2004).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable

11

inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (citations omitted). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted). However, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) . . . ." Greenburg v. P.R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987); see also Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir. 1996) (reversing summary judgment and emphasizing that "determinations of motive and intent . . . are questions better suited for the jury.") (quoting Petitti v. New England Tel. & Tel. Co., 909 F.2d 28,34 (1st Cir. 1990)).

"Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Adria Int'l Grp., Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001). Thus, "a court must rule on each motion independently, deciding in each instance whether the moving party has met its burden under Rule 56." United States v. 100,000 in United States Currency, 305 F. Supp. 3d 238, 245 (D. Mass. 2018) (quoting Dan Barclay, Inc. v. Stewart & Stevenson Servs., Inc., 761 F. Supp. 194, 197-98 (D. Mass. 1991).

"The [trial] court is freed from the usual constraints that attend the adjudication of summary judgment motions" when "'the basic dispute between the parties concerns the factual inferences . . . that one might draw from the more basic facts to which the parties have drawn the court's attention,' where 'there are no significant disagreements about those basic facts,' and where neither party has 'sought to introduce additional factual evidence or asked to present witnesses.'" Equal Employment Opportunity Comm'n v. Steamship Clerks Union 1066, 48 F.3d 594, 603 (1st Cir. 1995) (quoting Federacion de Empleados del Tribunal Gen. de Justicia v. Torres, 747 F.2d 35, 36 (1st Cir. 1984)). In those circumstances, "[t]he court may then engage in a certain amount of differential fact finding, including the sifting of inferences." Id.

For the reasons set forth below, the court finds that no material issue of fact exists and Carolina is entitled to judgment in its favor as a matter of law.

12

**b. The Section 362(b)(4) Exception to the Automatic Stay**

"The filing of the bankruptcy petition triggers an automatic stay of, among other things, 'any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.'" Empresas Martinez Valentin Corp. v. PC P.R. LLC (In re Empresas Martinez Valentin Corp.), 2017 Bankr. LEXIS 941, *22 (Bankr. D. P.R. Apr. 4, 2017). However, section 362(b)(4) states that the filing of a petition does not operates as a stay:

> of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power.

11 U.S.C § 362(b)(4).

Generally, "to the extent that an action pending in a nonbankruptcy forum . . . is stayed under § 362(a), that other forum has no subject matter jurisdiction while the stay remains in effect." In re Mid-City Parking, Inc., 332 B.R. 798, 804 (Bankr. N.D. Ill. 2005). But "[t]he Bankruptcy Code's automatic stay does not automatically halt all judicial proceedings against a defendant." TDC Int'l Corp. v. Burnham, 2018 U.S. Dist. LEXIS 209370, *2-3 (E.D. Mich. Dec. 12, 2018). "The 'police or regulatory power' exception allows the enforcement of laws affecting health, welfare, morals, and safety despite the pendency of the bankruptcy proceeding." Lockyer v. Mirant Corp., 398 F.3d 1098, 1107 (9th Cir. 2005). Courts have determined that "[a] continuing civil enforcement proceeding brought by a governmental unit and the enforcement of injunctive relief obtained therein are exempted from the automatic stay provisions of § 362(a)." SEC v. First Financial Group, 645 F.2d 429, 437(5th Cir. 1981). And "[a] government unit need not affirmatively seek relief from the automatic stay to initiate or continue an action subject to the exemption." Lockyer v. Mirant Corp., 398 F.3d at 1107.

"[S]tate courts have concurrent jurisdiction to determine whether the automatic stay applies in a particular state court proceeding." Rentas v. Serrano (In re Garcia), 553 B.R. 1, 12 (Bankr. D.P.R. 2016). "The court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the

13

proceeding pending before it is subject to the automatic stay." In re Baldwin-United Corp. Litigation, 765 F.2d 343, 347 (2nd Cir. 1985).

"The bankruptcy court from which the automatic stay originated nonetheless has the final say." In re Mid-City Parking, Inc., 332 B.R. at 804. "[C]ollateral challenges to a state court's automatic-stay determination are not forbidden . . . because the bankruptcy court is viewed as enforcing its own injunction pursuant to the Supremacy Clause rather than conducting unauthorized appellate review of a state court order." In re Mid-City Parking, Inc., 332 B.R. at 805. "[W]hen faced with a collateral challenge to a state court determination that the stay does not apply, the bankruptcy court having jurisdiction over a bankruptcy case in which the stay arises must adjudicate the question anew." In re Angelo, 480 B.R. 70, 83 (Bankr. D. Mass. 2012). But "the applicability of the automatic stay need not be resolved by the Bankruptcy Court in the first instance." United States v. Delfasco, Inc., 409 B.R. 704, 708 (D. Del. 2009). And "[a]ssuming its jurisdiction is otherwise sound, the non-bankruptcy court may enter orders not inconsistent with the terms of the stay." Moxon v. Findling (In re Moxon), 2006 U.S. Dist. LEXIS 14893, *7 (E.D. Mich. Mar. 31, 2006).

Here, the threshold matter is: was Carolina acting under its police and regulatory powers? If it was, Carolina's actions were not, under section 362(b)(4), subject to the automatic stay. And, thus, the state courts acted with subject matter jurisdiction.

On October 29, 2018, Carolina's Department of Environmental Affairs and Office of Compliance and Enforcement inspected JJW Metal's premises and issued a Notification and/or Notice of Breach. The Notification recommended that JJW Metal "bring [its] activity into compliance." One month later a fire broke out at JJW Metal's premises. The very next day Carolina filed its complaint against JJW Metal in the superior court. Carolina's complaint is an action to enforce its police and regulatory powers to protect its environment and the health of its residents. It is also an action to enforce its authority to issue and revoke permits when a permit holder fails to comply with municipal regulations. The complaint alleges that the October 29 inspection found:

> The company does not operate in accordance with environmental laws and regulations.
>
> . . .

14

> [T]here is an excessive accumulation of ferrous materials and other waste for which it is not known whether there is a permit in effect. Therefore, they rely on the Construction and Operation Permit (IP-160209), which provides, in its Section IV, on additional conditions, among which, the requirement to have a permit in accordance with the Hazardous Waste Regulations, Rule 643.
>
> As part of the intervention, the [JJW Metal] center was asked for the immediate compliance order [sic] permit issued by the EQB.
>
> It was referred to the complaints division at the Environmental Quality Board. The case was referred to Frances Segarra.
>
> Gas cylinders were found and it was unknown whether they have been degassed. In addition, spilled oil and a "pool" of used oil were observed. A type of shaving was applied to it without completing the remediation process, which results in ground contamination.
>
> The presence of tires was observed, which results in a source of combustion and propagation.
>
> The company does not operate in an orderly fashion. Dispersed oils were found in the ground and the waste received is not divided up in accordance with regulations.
>
> Wetlands and sensitive areas such as the bed of the Río Grande de Loíza river are being impacted, as percolation could impact if there are wells within a distance of 4 miles and about 15 miles downstream. Moreover, the fact that it is near sensitive areas such as the Piñones forest and the potential impact on fauna in the area, such as the brown pelican. These species are endangered when their natural environment changes.
>
> The fact that it is close to sensitive areas and the bed of the Río Grande de Loíza river and its inappropriate [use] could have an impact on water, air and soil quality. The generation of dioxins and furans as part of the combustion process [can] also affect air quality.

(Exhibit C, pp. 5-6; Adv. Dkt. No. 100.) The allegations of the complaint filed in the superior court show that Carolina was seeking to enforce only its public health and safety, environmental, and related permitting laws and regulations. Carolina was plainly not pursuing its pecuniary interest in the state court action.

Before the bankruptcy filing, the state court ordered JJW Metal to suspend its operations. The bankruptcy filing did not automatically authorize JJW Metal to resume its otherwise unlawful operations. "A debtor in possession under Chapter 11 is not excused because of its bankruptcy from valid and enforceable state and local regulations." Cournoyer v. Lincoln, 790 F.2d 971, 977 (1st Cir. 1986).

15

The Puerto Rico court of appeals correctly ruled that the superior court action was excepted by the automatic stay pursuant to section 362(b)(4). Carolina has the legal authority and duty to issue permits and pursue legal actions regarding violations to its regulations. "A state acts within its police and regulatory powers when it enforces 'laws affecting the health, welfare, morals, and safety' of the public, or when it acts to 'effectuate a public policy.'" In re Iams Funeral Home, Inc., 2007 Bankr. LEXIS 4023, *7 (Bankr. N.D. W. Va. Dec. 6, 2007) (quoting City & County of San Francisco v. PG&E Corp., 433 F.3d 1115, 1123 (9th Cir. 2006)), aff'd, 392 B.R. 218 (N.D. W. Va. 2008).

And Carolina did not violate the automatic stay by asking the superior court and the court of appeals to review the subject matter jurisdiction of the state court. Having subject matter jurisdiction over case number CA2018CV03362, the superior court could continue with the proceedings, hold a hearing on June 8, 2022, and subsequently issue a ruling ordering JJW Metal to immediately suspend its operations.

Additionally, the automatic stay in this case terminated at the latest on April 1, 2022, the effective date of the plan of reorganization, as per article 12.3 of the plan. That is over two months before the June 8, 2022, hearing in the superior court.

JJW Metal alleges that Carolina's actions interfered with the execution of the plan and that the plan provisions are binding on Carolina. But the plan confirmed by the court includes an alternative scenario which dealt with the possibility of the state court forcing JJW Metal to cease operations in Carolina. In the alternative scenario, JJW Metal proposed to move the operations to another municipality. Also, the plan provided projections under the alternative scenario and how JJW Metal could, even under this scenario, make plan payments. (Bankr. Dkt. No. 259, Article 5, pp. 13-14. See also Exhibit B of the plan, Cash Flow Projections-Monthly Year 2022, Scenario B).

And the confirmation order entered on January 1, 2022, states that:

[n]othing in this Order or the Plan discharges, releases, precludes or enjoins: (i) any police or regulatory liability to a governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5) ("Claim"); (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date; (iii) any liability to a Governmental Unit under police and regulatory statutes or regulations that any entity would be subject to as the owner

16

or operator of property after the Confirmation Date; or (iv) any liability to a Governmental Unit on the part of any non-debtor. Nor shall anything in this Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence. Nothing in this Order or the Plan shall affect any setoff or recoupment rights of any Governmental Unit. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or the Plan or to adjudicate any defense asserted under this Order or the Plan.

(Bankr. Dkt. No. 324).

Therefore, neither the plan provisions nor the confirmation order precluded Carolina from exercising its police and regulatory powers against JJW Metal.

## VI. Conclusion

Carolina did not violate the automatic stay by pursuing state court proceedings excepted under section 362(b)(4). The orders entered by the superior court in case number CA2018CV03362 against JJW Metal are valid and enforceable. The filing of the JJW Metal's bankruptcy petition did not sanction an operation otherwise prohibited under Carolina's policies and regulations. Neither the plan provisions nor the confirmation order precluded Carolina from exercising its police and regulatory powers against JJW Metal.

For the reason stated above, the court grants Carolina's motion for summary judgment (Adv. Dkt. No. 101), denies JJW Metal's motion for summary judgment (Adv. Dkt. No. 111) and dismisses this adversary proceeding. A separate judgment of dismissal shall be entered.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 20th day of June, 2024.

/S/ Edward A. Godoy
U.S. Bankruptcy Judge

17